UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **JAMES G. KENT,** | Civil No. 05-2876 (MJD/SRN) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| **J.S. WALTON, Associate Warden, Duluth Federal Prison Camp, and the Federal Bureau of Prisons,** | |
| Respondents. | |

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned matter comes before the undersigned on Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) and Petitioner's Motion to Consolidate (Doc. No. 9). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a)(iii)(2). For the reasons set forth below, the Court recommends granting in part and denying in part Petitioner's petition and denying his motion.

**I.    BACKGROUND**

In December 2004, Petitioner was sentenced in the United States District Court for the Central District of Illinois to serve twenty-one months in prison for mail fraud. (Buege Aff. (Doc. No. 7) Ex. A.) Petitioner is now a federal prisoner (Register Number 14391-026) incarcerated at the Bureau of Prisons (BOP) Federal Prison Camp in Duluth, Minnesota. (Id. ¶ 3.) Assuming Petitioner receives all credits available to him under 18 U.S.C. § 3624(b) for good behavior, his projected release date is August 2,

2006. (Id.) The BOP determined that Petitioner is eligible to spend the last ten percent, and not any greater period of time, of his prison term in a Community Corrections Center (CCC or half-way house). (Id. ¶ 5.) This means that, if bed space is available, Petitioner will be released to a CCC on June 9, 2006. (Id.)

On December 13, 2005, Petitioner applied to the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Id. at 1.) The petition contains three "claims" which seek that this Court (1) issue a writ of habeas corpus requiring the BOP to consider transferring Petitioner to a CCC for the last six months of his sentence; (2) issue a declaration that the BOP's regulations limiting his transfer to a CCC to the last ten percent of his prison term are unlawful; and (3) estop the BOP from asserting that its regulations are valid. (Id. at 5-6.) The Court ordered the United States to show cause why the writ should not be granted (Doc. Nos. 3, 5) and the United States filed its return on January 20, 2006 (Doc. No. 6). On January 24, 2006, Petitioner filed a Motion to Consolidate (Doc. No. 9), in which he moves the Court to consolidate his case with Ragsdale v. Caraway, Civ. No. 05-1596 (MJD/JJG) (D. Minn. petition filed Aug. 1, 2005).

## II. PARTIES' POSITIONS

All of Petitioner's claims challenge the BOP's interpretation of 18 U.S.C. § 3624(c), one of the statutes governing the designation of a federal prisoner's place of imprisonment. (Doc. No. 1 at 5-6.) In particular, Petitioner challenges the BOP's determination that he should be released to a CCC for only the last ten percent of his term of imprisonment. (Id. at 3-5.) Petitioner argues that the BOP's determination is based upon its regulations interpreting 18 U.S.C. § 3624(c), regulations which,

2

according to Petitioner, violate the statute and the principles set forth by the Eighth Circuit Court of Appeals in Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004).  (Id. at 3-4.) Petitioner argues that the Elwood court held that 18 U.S.C. § 3624 grants the BOP the discretion to place inmates in CCCs at any time during their term of imprisonment, not to exceed six months, and that the reference to the last ten percent of the prison term in § 3624(c) is a statutory floor—not a ceiling—for the amount of time the BOP may place a prisoner in a CCC to adequately adjust and prepare the prisoner for re-entry into the community.  (Id.)

The United States counters that Petitioner's petition should be denied because (1) Petitioner has not exhausted his administrative remedies; and (2) Congress has conferred on the BOP the discretion to decide where to incarcerate inmates and the BOP's regulations constitute a permissible interpretation of the applicable statutes governing that placement.  (Doc. No. 6 at 4-8.)  The United States

> acknowledges that United States District Court Judge Michael J. Davis, to whom this case is assigned, has previously ruled against respondent on the very issues presented herein, by finding invalid the BOP's interpretation of applicable statutes, as ultimately enunciated in the February 2005 [BOP] Rules.  Accordingly, respondent submits [its] memorandum for the purpose of preserving its position—that the February 2005 [BOP] Rules are valid—until disposition of Fults v. Sanders, Appeal No. 05-3490 which was filed with the Eighth Circuit on August 26, 2005 and addresses the same issue raised herein.

(Id. at 2 (citations omitted.))

## III. DISCUSSION

The relevant statutory scheme at issue involves two statute sections, 18 U.S.C. §§ 3621(b) and 3624(c). Section 3621(b) provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence—
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Section 3624(c) provides:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed 6 months, of the last [ten percent] of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust and to prepare for the prisoner's re-entry into the community.

Prior to December 2002, "the BOP had a policy of allowing prisoners to serve their last six months of incarceration in a CCC regardless of what percent of the sentence this six months comprised." Elwood, 386 F.3d at 844. But in December of 2002, the Office of Legal Counsel of the U.S. Department of Justice (OLC) informed the BOP that CCC confinement did not constitute "imprisonment" as used in § 3621(b) and therefore that statute section did not apply to CCC placement. Id. Because the OLC found that §

3624(c) did apply to CCC placement, the OLC concluded, in the words of the Elwood court, that "the BOP had no authority to transfer a prisoner to a CCC, except for the lesser of the last ten percent of the sentence and the last six months of the sentence." Id. at 844-45.  That same month in 2002, the BOP changed its policy so that inmates could only be released to CCCs for the last ten percent of their terms, but no more than six months.  Id. at 845.

The BOP's new policy was challenged in the courts and came before the Eighth Circuit in Elwood.  In that case, the United States conceded that a CCC was a place of imprisonment and that the BOP could place inmates in CCCs pursuant to § 3621(b), but argued that § 3624(c) limited that general grant of authority to CCC placement for the last ten percent of a prisoner's term, not to exceed six months.  Id. at 846.  The Elwood court disagreed with the BOP's interpretation of the statutory scheme and determined that CCCs are "penal or correctional" facilities and that 18 U.S.C. § 3621(b) gives the BOP the authority to place prisoners in half-way houses at any time during their term of imprisonment.  See id. at 846-47.  The court concluded that:

> § 3621(b) gives the BOP the discretion to transfer prisoners to CCCs at any time during their incarceration.  Further, the BOP is required to place prisoners in "conditions that will afford [them] a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community" during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable.  This duty shall not extend beyond the last six months of the prisoner's sentence.

Id. at 847(quoting § 3624(c)); see also Goldings v. Winn, 383 F.3d 17, 28-29 (noting that "18 U.S.C. § 3621(b) authorizes the BOP to transfer [a prisoner] to a CCC at any time during his prison term. The BOP's discretionary authority under § 3621(b) is not subject to the temporal limitations of 18 U.S.C. § 3624(c)").

Subsequent to the Elwood decision, the BOP adopted two new rules for determining an inmate's eligibility date for CCC placement. See 70 Fed. Reg. 1659 Jan. 10, 2005), available at 2005 WL 34181. These rules became effective February 14, 2005. Id. The first, codified at 28 C.F.R. § 570.20, provides:

> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

The second rule, codified at 28 C.F.R. § 570.21 provides:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

### A.     **Exhaustion of Administrative Remedies**

The United States contends that Petitioner "should not be allowed to deliberately bypass the administrative remedy process where this circuit has held that exhaustion of administrative remedies is required." (Doc. No. 6 at 4.) An inmate cannot ordinarily proceed with his petition for writ of habeas corpus where he has not exhausted all of the administrative remedies provided by the BOP. Mason v. Ciccone, 531 F.2d 867, 870 n.5 (8th Cir. 1976) ("[P]risoner petitioners which seek a writ of habeas corpus and relief from prison conditions must allege . . . exhaustion of prison grievance procedures."

(citation omitted)).  But a prisoner need not pursue his administrative remedies when doing so would be futile.  See Gibson v. Berryhill, 411 U.S. 564, 575 n.14 (noting that courts have not required the exhaustion of administrative remedies where the administrative agency had "predetermined the issue before it"), cited in Knish v. Stine, 347 F. Supp. 2d 682, 686-87 (D. Minn. 2004) (Davis, J.); Elwood, 386 F.3d at 844 n.1 (stating that the BOP had conceded that challenging the validity of the CCC placement policy through the administrative process would be futile).

Numerous courts have already determined that challenging the BOP's CCC placement policy would be futile because the BOP has no intention of changing that policy absent a Court order to do so.  See e.g., Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 239 n.2 (3d Cir. 2005) (stating its agreement with the district court determination that exhaustion of BOP remedies would be futile because the petitioner challenged the validity and not the application of the BOP CCC placement regulations); Stonecipher v. Caraway, Civ. No. 05-2161 (JRT/JSM), Doc. No. 13 at 3 (D. Minn. Jan. 20, 2006) (Tunheim, J.); ("The Court also concludes that this action should not be dismissed for petitioner's lack of exhaustion.  Petitioner is challenging a policy that BOP has steadfastly defended.  Exhaustion is not required when it would be futile."); Young v. Caraway, Civ. No. 05-1476 (JNE/JJG), Doc. No. 14 at 3-4 (D. Minn. Jan. 13, 2006) (Graham, M.J.) (finding in a Report and Recommendation that there was "no reason to believe that the BOP would have reconsidered the validity of its policy if Petitioner had sought relief under the available administrative remedy process."); Ragsdale v. Caraway, Civ. No. 05-1596 (MJD/JJG), Doc. No. 14 at 2 (D. Minn. docket entry dated Nov. 14, 2005) (Graham, M.J.) ("Exhaustion is futile under these circumstances."),

7

Report and Recommendation adopted, (D. Minn. Jan. 6, 2006) (Davis, J.).  The Court finds that Petitioner challenges the validity, not the application of the BOP regulations. Petitioner's pursuit of his habeas claims through the BOP's administrative grievance process would have been futile.  Thus, his failure to exhaust his administrative remedies does not prevent him from bringing the petition now before the Court.

### B. Validity of the BOP's CCC Placement Regulations

The crux of the substantive issue before the Court is whether the BOP can properly rely on its February 2005 regulations to determine the earliest date that Petitioner can be assigned to community confinement.  These regulations categorically deny placement in CCCs to any inmate who has not reached the final ten percent of his prison term.  See 28 C.F.R. § 570.21.  The United States contends that this policy is valid primarily for two reasons: (1) the BOP's interpretation of the statutory scheme it is entrusted to administer is entitled to deference; and (2) the BOP's categorical exercise of the discretion conferred on it by another part of § 3621 has been determined permissible by the United States Supreme Court.  (See Doc. No. 6 at 4-8.)  The Court finds that neither argument saves the BOP's interpretation of the statutory scheme for the reasons set forth below.

#### 1. Deference to Agency Decision

Because this case involves the BOP's construction of statutes it administers, 18 U.S.C §§ 3621(b) and 3624(c), the Court's analysis of the BOP's interpretation is governed by the Supreme Court's decision in Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  See FDA v. Brown & Williamson Tobacco Corp.,

529 U.S. 120, 132 (2000).

> Under Chevron, a reviewing court must [1.] ask "whether Congress has directly spoken to the precise question at issue." If Congress has done so, the inquiry is at an end; the court "must give effect to the unambiguously expressed intent of Congress." But if Congress has not specifically addressed the question, a reviewing court must [2.] respect the agency's construction of the statute so long as it is permissible.

Id. The issue before the Eighth Circuit in Elwood was whether the BOP's reading of 18 U.S.C. §§ 3621(b) and 3624(c)—that "the BOP had no authority to transfer a prisoner to a CCC, except for the lesser of the last ten percent of the sentence and the last six months of the sentence"—was correct. Elwood, 386 F.3d at 844-45. In applying the two step Chevron analysis, the Elwood court found that: "Congress addressed the issue, so we need not look to the agency's interpretation of the statute." Id. at 845; see also Knish v. Stine, 347 F. Supp. 2d 682, 687 (D. Minn. 2004) (Davis, J.) (finding that the Elwood court had determined that Congress had addressed the issue). While the new BOP rules, effective February 14, 2005, were not before the court in Elwood, the BOP's interpretation of the statutory scheme in the new rules mirrors the policy adopted following the OLC's December 2002 directive and that post-OLC directive policy was before the Elwood court. See Hayek v. Caraway, Civ. No. 05-1424 (PAM/JSM), Doc. No. 13 at 5 (D. Minn. Dec. 7, 2005) (Magnuson, J.) ("The practical effect of the February 2005 Rules is identical to the December 2002 policy, as both limit the BOP's discretion to designate prisoners to community confinement centers to the lesser of six months or the last ten percent of their sentences.") The Court finds that it is bound by the determination of the Elwood court that no deference is due the BOP's regulations because, under the statutory scheme: (1) "Section 3624(c) clearly states that the BOP"

9

has an affirmative <u>duty</u> to "'<u>assure</u>' that each prisoner spends a reasonable part of the last ten percent of his or her term" in a community confinement setting "to the extent that this is practicable" but that this <u>duty</u> "shall not extend beyond the last six months of the prisoner's sentence"; and (2) "Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more." Elwood, 386 F.3d at 846-47.

The United States argues that § "3621(b) is silent, however, on whether the BOP must make all facility-designation decisions on a case-by-case basis or may instead exercise its wide designation discretion categorically." (Doc. No. 6 at 6.) The Court disagrees. Section 3621(b) "clearly states that the BOP must consider all five of the listed factors when making placement decisions." Ragsdale, Civ. No. 05-1596 (MJD/JJG), Doc. No. 18 at 5. In considering the exact issue now before this Court, the Honorable District Judge Paul A. Magnuson found that the proposed

> rules ultimately adopted by the BOP in 2005 substantively discuss two of the statutory factors and expressly state that the BOP considered all five factors under § 3621(b). See 69 Fed. Reg. [51,213,] 51214.
> Nonetheless, the Court finds that the BOP did not and could not consider the remaining criteria required under Section 3621(b) when promulgating the February 2005 Rules. These criteria expressly require consideration of a prisoner's individual circumstances: the nature of the circumstances of the offense, the history and characteristics of the prisoner, and any relevant statements by the sentencing court. These factors cannot be applied categorically. Accordingly, . . . the BOP disregarded these statutorily required factors when promulgating the February 2005 Rules.

Hayek, Civ. No. 05-1424 (PAM/JSM), Doc. No. 13 at 6.

Finally, "even if the statute is ambiguous, the BOP's interpretation is arbitrary" because it "'arbitrarily and unreasonably distinguishes between prisoners who are in the last ten percent of their sentence and those who are not and between [halfway houses] and other . . . institutions.'" Ragsdale, Civ. No. 05-1596 (MJD/JJG), Doc. No. 18 at 5

(quoting Baker v. Willingham, No. 3:04CV1923 (PCD), 2005 WL 2276040, at *6 (D. Conn. Sept. 19, 2005)).

## 2.     Categorical Use of Discretion

"[E]ven if a statutory scheme requires individualized determinations, the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority."  Am. Hosp. Ass'n v. N.L.R.B., 499 U.S. 606, 612 (1991).  The United States contends that the Supreme Court decision in Lopez v. Davis, 531 U.S. 230 (2001) supports the BOP's construction of 18 U.S.C. § 3621(b), embodied in part in 28 C.F.R. § 570.20.  (Doc. No. 6 at 6-8.)  Under its interpretation of § 3621(b), the BOP argues it is able to employ a categorical rule (i.e., that no inmate will be placed in a CCC prior to serving ninety percent of their sentence) rather than making an individualized placement determination based upon all of the factors set forth in § 3621(b).  (Id.)

The Lopez case involved the BOP's construction of 18 U.S.C. § 3621(e), the relevant provision of which provides that the BOP may reduce the prison term of an inmate convicted of a "nonviolent offense" under certain circumstances.  Lopez, 531 U.S. at 232.  The BOP promulgated a regulation that categorically denied early release to inmates convicted of felonies involving "the carrying, possession, or use of a firearm." Id. (quoting 28 C.F.R. § 550.58(a)(1)(vi)(B)).  The Supreme Court upheld the categorical denial of early release to prisoners whose crimes involved a firearm and stated: "The Bureau is not required continually to revisit 'issues that may be established fairly and efficiently in a single rulemaking proceeding.'"  Id. at 244 (citation omitted).  The Court's ruling was based in part on the Eighth Circuit's earlier finding in Lopez that § 3621(e)

11

"grants no entitlement to any inmate or class of inmates, . . . and it does not instruct the Bureau to make 'individual, rather than categorical, assessments of eligibility for inmates convicted of nonviolent offenses.'" Id. at 237.

The Court finds that the statute at issue in this case, 18 U.S.C. § 3621(b) differs in significant ways from the statute considered in Lopez. For example, as the Third Circuit has found, in § 3621(b):

> Congress specifically delineated factors to be taken into account by the BOP in determining where an inmate is placed. Worthy of special mention is the recommendation of the sentencing judge. United States District Judges take their sentencing responsibilities very seriously and are familiar with the various BOP institutions and programs. Their recommendation as to the execution of sentences are carefully thought out and important to them.

Woodall, 432 F.3d at 247. The Court finds that the factors specifically enumerated by § 3621(b) are not "issues of general applicability," Am. Hosp. Ass'n, 499 U.S. at 610, that can be addressed by a categorical rule but instead must be considered in light of each individual prisoner's circumstances. Woodall, 432 F3d at 247. Where the regulation in Lopez "filled a statutory gap left by Congress," the BOP's categorical policy disallowing assignment to CCCs until the last ten percent of a sentence "contravenes existing statutory guidelines." Lesnick v. Menifee, Civ. No. 05-4719 JCF, 2005 WL 2542908, at *9-10 (S.D.N.Y. Oct. 11, 2005), cited in Hayek, Civ. No. 05-1424 (PAM/JSM), Doc. No. 13 at 6.

**IV.    RECOMMENDATION**

Given the above, the Court finds invalid the BOP regulations (embodied in 28 C.F.R. §§ 570.20 and 570.21) which prohibit the BOP from placing an inmate in a CCC for more than the last ten percent of his prison term after an individualized consideration

of the factors enumerated in 18 U.S.C. § 3621(b).  This finding is consistent with the decision of the Third Circuit Court of Appeals in Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 247 (3d Cir. 2005) and the courts of the District of Minnesota that have addressed the same issue.  E.g., Stonecipher v. Caraway, Civ. No. 05-2161 (JRT/JSM), Doc. No. 13 at 8 (D. Minn. Jan. 20, 2006) (Tunheim, J.) (finding the BOP's CCC placement policy (28 C.F.R. §§ 570.20 and 570.21) invalid and granting the prisoner's habeas petition); Threlkeld v. Morrison, Civ. No. 05-2604 (PAM/AJB), Doc. No. 11 at 2 (D. Minn. Jan. 17, 2006) (Magnuson, J.) (adopting Magistrate Judge Boylan's Report and Recommendation (Doc. No. 8) which found the BOP's CCC placement policy invalid but denying the prisoner's petition as moot because the prisoner was released to a CCC pending the adoption of the Report and Recommendation); Young v. Caraway, Civ. No. 05-1476 (JNE/JJG), Doc. No. 14 at 15-16 (D. Minn. Jan. 13, 2006) (Graham, M.J.) (finding the BOP's placement policy invalid and, thus, recommending that the prisoner's habeas petition be granted); Ragsdale v. Caraway, Civ. No. 05-1596 (MJD/JJG), Doc. No. 18 at 6 (D. Minn. Jan. 6, 2006) (Davis, J.) (adopting Magistrate Judge Graham's Report and Recommendation, finding the BOP's CCC placement policy invalid, and granting the prisoner's habeas petition); Hayek v. Caraway, Civ. No. 05-1424 (PAM/JSM), Doc. No. 13 at 9-10 (D. Minn. Dec. 7, 2005) (Magnuson, J.) (adopting the Report and Recommendation of Magistrate Judge Mayeron, finding the BOP's CCC placement policy invalid, and granting the prisoner's habeas petition); cf. Knish v. Stine, 347 F. Supp. 2d 682, 688 (D. Minn. 2004) (Davis, J.) (finding "the new BOP policy prohibiting assignment to a CCC until the last ten percent of a prisoner's sentence to be invalid," in a case arising prior to the February 2005 promulgation of 28

C.F.R. §§ 570.20 and 570.21 but addressing the same basic policy).

Because the Court finds that the BOP regulations are invalid, the Court recommends granting Claim I of Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) and further recommends that Respondent be directed to reconsider the date when Petitioner should be assigned to community confinement in light of the criteria set forth in 18 U.S.C. § 3621(b) and without regard to 28 C.F.R. §§ 570.20 and 570.21. The Court recommends denying Petitioner's claims for declaratory and estoppel relief because the United States has represented in other cases that it will follow the mandate of the Eighth Circuit should the court invalidate the BOP regulations in the case now pending before it in Fults v. Sanders, Appeal No. 05-3490. The Court recommends denying as moot Petitioner's Motion to Consolidate (Doc. No. 9) because judgment has already been entered in the case with which he seeks to consolidate his case. See Ragsdale v. Caraway, Civ. No. 05-1596 (MJD/JJG), Doc. Nos. 18-19 (D. Minn. docket entries dated Jan. 6, 2006).

Therefore, **IT IS HEREBY RECOMMENDED that:**

1. Claim I of Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) be **GRANTED** and that Respondent be directed to reconsider the date when Petitioner should be assigned to community confinement in light of the criteria set forth in 18 U.S.C. § 3621(b) and without regard to 28 C.F.R. §§ 570.20 and 570.21;

2. Claims II and III of Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) be **DENIED**; and

3. Petitioner's Motion to Consolidate (Doc. No. 9) be **DENIED as moot**.

Dated: February 7, 2006

        s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to D. Minn. L.R. 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by February 27, 2006 a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.